**UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CANSORB INDUSTRIES | ) | Case No.: 07-50041 |
| CORPORATION, | ) | |
| | ) | |
| Debtor. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| C. EDWIN ALLMAN, III, TRUSTEE | ) | |
| FOR THE BANKRUPTCY ESTATE | ) | |
| OF CANSORB INDUSTRIES | ) | |
| CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No.: 07-6072 |
| | ) | |
| vs. | ) | |
| | ) | |
| JOACHIM WAPPLER, CANSORB | ) | |
| INDUSTRIES, INC., STEELMASTER | ) | |
| INDUSTRIES, INC., 2070997 | ) | |
| ONTARIO, INC., and | ) | |
| DWIGHT L. CROWELL, III, in his | ) | |
| capacity as substitute trustee on the | ) | |
| Deed of Trust recorded in Book 652, | ) | |
| Page 400 of the Rowan County Public | ) | |
| Registry, | ) | |
| | ) | |
| Defendants. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

## MEMORANDUM OPINION

This matter came before the Court on July 20, 2009 upon the Defendants' Motion for

Summary Judgment (the "Defendants' Motion") filed by Defendants Joachim Wappler, Cansorb

Industries, Inc., Steelmaster Industries, Inc., and 2070997 Ontario, Inc. (collectively, the

"Wappler Defendants") on June 12, 2009, and the Trustee's Motion for Summary Judgment (the

1

"Plaintiff's Motion") filed by C. Edwin Allman, III (the "Plaintiff") on June 12, 2009. At the hearing, John H. Boddie appeared on behalf of the Wappler Defendants, Jeffrey E. Oleynik appeared on behalf of the Plaintiff, and Steven M. Russell appeared on behalf of Defendant Dwight L. Crowell, III, who does not support the Plaintiff's Motion or the Defendants' Motion.

The Plaintiff's complaint has seven causes of action: (1) improper foreclosure, (2) non-payment of surplus proceeds from the foreclosure sale to Cansorb Industries Corporation (the "Debtor"), (3) avoidance of fraudulent transfer pursuant to Section 548 of the Bankruptcy Code, (4) avoidance of fraudulent transfer of real property pursuant to Section 544(b) of the Bankruptcy Code and Sections 39-23.4 and 23.5 of the North Carolina General Statutes, (5) avoidance of fraudulent transfer of personal property pursuant to Section 544(b) of the Bankruptcy Code and Section 39-23.4 of the North Carolina General Statutes, (6) breach of fiduciary duty, and (7) unfair and deceptive trade practices pursuant to Chapter 75 of the North Carolina General Statutes. The Plaintiff moves for summary judgment on the first, third, and fourth causes of action. The Wappler Defendants move for summary judgment on the first, second, third, fourth, sixth, and seventh causes of action. After consideration of the Plaintiff's Motion, the Defendants' Motion, the pleadings, briefs, affidavits, and other documents filed in support of the two motions, the arguments of counsel, and the relevant law, the Court will deny both the Plaintiff's Motion and the Defendants' Motion.

## I. JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core

2

proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (H), and (O), which this Court has the jurisdiction to hear and determine.

## II.  PARTIES

Joachim Wappler ("Wappler") is a citizen and resident of Canada.  Wappler is the majority shareholder of Cansorb Industries, Inc. ("Cansorb Canada") and Steelmaster Industries, Inc. ("Steelmaster"), and he is owner and president of 2070997 Ontario, Inc. ("Ontario").  Cansorb Canada, Steelmaster, and Ontario are Canadian corporations.  The Debtor, Cansorb Industries Corporation, is a Nevada corporation and a wholly-owned subsidiary of Cansorb Canada.  Dwight L. Crowell, III is the substitute trustee (the "Substitute Trustee") for the deed of trust recorded in Book 652, page 400 of the Rowan County, North Carolina Register of Deeds.

## III.  FACTS

In 1985, Cansorb Canada was incorporated in British Columbia, Canada.  In 1987, Cansorb Canada incorporated the Debtor, making Cansorb Canada its parent company and sole shareholder.  In the late 1980s, the Debtor purchased the assets of North Carolina Wood Fuels L.P. and began manufacturing feline litter products from recycled wood waste at a plant located at 555 Kesler Road, Cleveland, North Carolina (the "Property").  The Debtor's only means of revenue was through use of the Property.  On December 1, 1989, William Kraigsley became the managing director of the Debtor and served in that capacity until November 2004.  On December 13, 1989, Wappler acquired a controlling interest in Cansorb Canada.  John S. Edmunds is an accountant who rendered tax and other accounting services to Wappler and the companies that

3

Wappler owned or controlled from around 1980 to the present.[1]

On December 28, 1989, the Debtor, Cansorb Canada, and Wappler entered into a loan agreement (the "Loan Agreement") whereby Wappler agreed to lend up to $500,000.00 to Cansorb Canada and the Debtor.  The Loan Agreement had a maturity date of December 28, 1994.  Pursuant to the Loan Agreement, Cansorb Canada agreed to execute a convertible debenture in favor of Wappler and to secure the loan with the assets of Cansorb Canada, and the Debtor agreed to execute a debenture in favor of Wappler and to secure the loan by the Debtor's assets.[2]

Also on December 28, 1989, Cansorb Canada executed a convertible debenture agreement (the "Convertible Debenture") whereby Cansorb Canada agreed to pay $500,000.00 to Wappler on or before December 28, 1994.  The Convertible Debenture gave Wappler the right to convert all or part of the principal sum of $500,000.00 and interest into units consisting of common shares of Cansorb Canada.  As security for the $500,000.00 advance, the Convertible Debenture provides that Cansorb Canada will pledge all of its properties, assets, and undertakings.  The Convertible Debenture states that it is to be construed in accordance with the laws of the Province of British Columbia, Canada.

That same day, the Debtor apparently executed a promissory note (the "Promissory

---

[1]Edmunds was designated as Cansorb Canada's witness in response to the Debtor's Rule 30(b)(6) deposition notice.

[2]"To secure the repayment of the Loan and the payment of all other monies due hereunder, Cansorb [Canada] agrees to grant to [Wappler] the Convertible Debenture to be a first charge against the assets of Cansorb [Canada] and [the Debtor] agrees to grant to [Wappler] the Debenture to be a first charge against the assets of [the Debtor]."  Loan Agreement, ¶ 3.1.

Note") in favor of Wappler in the amount of $500,000.00, with a maturity date of December 28, 1994.  According to the Promissory Note, the Debtor pledged all of its "property, assets and undertakings" to secure "the interests of Joachim Wappler."  The Promissory Note is not notarized; it has only a date ("December 28, 1989") and location ("Mississauga Ontario") in the same typeface as the rest of the two-paragraph document.  Even though they were apparently executed on the same day, neither the Loan Agreement nor the Promissory Note references the other.

At some point, the Debtor executed a debenture agreement ("the Debenture") in favor of Wappler in the amount of $500,000.00, with a maturity date of December 28, 1994.  The Debenture is signed but undated.  However, on January 12, 1990, Kraigsley, the Debtor's managing director, caused the Debenture to be notarized.  As security for the $500,000.00 advance, the Debenture provides that the Debtor will pledge the Property and all of its assets. The Debenture states that it is to be construed in accordance with the laws of the State of North Carolina.  The Debenture makes reference to the Loan Agreement dated December 28, 1989, but it provides no conversion rights to Wappler.

On January 12, 1990, the Debtor executed a deed of trust (the "Deed of Trust") on the Property for the benefit of Wappler.  Wappler signed the Deed of Trust as the President of the Debtor, and Kraigsley signed it as Secretary.  That same day, the Deed of Trust was recorded in Book 652, page 400 of the Rowan County, North Carolina Register of Deeds.  The Deed of Trust is a form.  As part of the original language of the form, the Deed of Trust stated that it secured a "Promissory Note," but the words "Promissory Note" were crossed out where they first appeared in the form and the words "Convertible Debenture" were written above them, resulting in the

5

Deed of Trust stating that the Debtor is indebted to WAPPLER in the amount of $500,000.00 "as evidenced by (sic) Convertible Debenture, the terms of which are incorporated herein by reference."  Thereafter, when the words "Promissory Note" appeared in the form, they were not crossed out.  In the very next sentence, the Deed of Trust states that the "final due date for payment of said Promissory Note, if not sooner paid, is December 28, 1994."  In the next paragraph, the Deed of Trust references "attorneys fees as provided in the Promissory Note." The Deed of Trust makes no reference to the Debenture executed by the Debtor.

In December of 1989, Wappler made the first of several advances, although the actual recipient of such advances remains unclear.  In April of 1990, Wappler converted $200,000.00 of the debt owed to him into 3,200,000 common shares of Cansorb Canada pursuant to the Convertible Debenture.  In August of 1991, Wappler converted the remaining $300,000.00 of debt into 5,099,574 common shares of Cansorb Canada.  Despite these conversions, Wappler continued to advance funds to either the Debtor or Cansorb Canada up until July 23, 2004.  In total, Wappler advanced funds in excess of $500,000.00.  Neither the Convertible Debenture nor the Debenture contains future advances provisions.

On May 1, 2003, the Debtor and Steelmaster entered into an agreement whereby the Debtor agreed to transfer certain equipment to Steelmaster in exchange for ongoing financial assistance.  Wappler signed the agreement on behalf of both the Debtor and Steelmaster.  By November 2004, the Debtor owned only the Property, inventory worth approximately $10,000.00, and accounts receivable totaling approximately $30,000.00.

On December 17, 2004, the Substitute Trustee sent Wappler an engagement letter so that the Substitute Trustee could represent him in a foreclosure on the Property.  On December 22,

6

2004, the Substitute Trustee initiated a foreclosure proceeding before the Rowan County Clerk of Superior Court (the "Clerk") entitled "In the Matter of the Proposed Foreclosure of a Deed of Trust Executed by Cansorb Industries Corp. in an Original Amount of $500,000.00 dated January 12, 1990 and Recorded in Book 652, Page 400 in the Office of the Register of Deeds of Rowan County by Dwight L. Crowell, Substitute Trustee, 04 SP 1012" (the "Foreclosure Proceeding").  In connection with the Foreclosure Proceeding, Wappler sent a copy of the Promissory Note to the Substitute Trustee, who then retrieved a copy of the Deed of Trust from the Rowan County Register of Deeds.  According to the deposition testimony of the Substitute Trustee, the Promissory Note was the only document sent to him by Wappler or Edmunds that purported to evidence a debt of the Debtor to Wappler.  Wappler and Edmunds informed the Substitute Trustee that the Deed of Trust secured the Promissory Note and that the Promissory Note and the Convertible Debenture were "one in the same."  (Crowell Aff. ¶ 4.)[3]

On February 3, 2005, Wappler executed an affidavit in support of the Foreclosure Proceeding.  The affidavit states that Wappler is the current owner of the indebtedness evidenced by the Promissory Note and the Deed of Trust, and that the Debtor was the current owner of the Property.  The affidavit also states that the outstanding principal balance on the Promissory Note is $601,524.13, with no payments having been received since December 28, 1994, the maturity date of the Promissory Note.  The record does not provide an explanation of the $601,524.13 that Wappler claims that he is owed pursuant to the Promissory Note.

---

[3]The Court assumes that Mr. Crowell meant to use the popular idiomatic phrase "one and the same," intending to express the notion that the Promissory Note and the Convertible Debenture were the same document.  See Christine Ammer, The American Heritage Dictionary of Idioms 459 (2003); Paul Brians, Common Errors in English Usage 162 (2nd ed. 2008).

On March 1, 2005, the Substitute Trustee filed an Affidavit of Certified Mail in the Foreclosure Proceeding.  The Affidavit of Certified Mail reflects that the "Amended Notice of Hearing" was served on the Debtor, addressed as follows: "Cansorb Industries, Corp., 555 Kesler Road, Cleveland, NC 27013."  The notice was not addressed to any officer or director of the Debtor or to any other individual.

On March 3, 2005, the Clerk issued an Order authorizing the foreclosure sale.  The Order states that "the Note" (presumably the Promissory Note) evidences a valid debt owed by the Debtor, the Note is now in default, and "the instrument securing said debt" gives Wappler the right to foreclose pursuant to a power of sale provision.

On March 24, 2005, the foreclosure sale was held at the Rowan County Courthouse.  The Substitute Trustee entered the high bid of $1,705,950.13 on Wappler's behalf.  This amount apparently represented the tax value of the Property.  That same day, the Substitute Trustee filed his initial report of sale stating that the mortgagor was Cansorb Canada, not the Debtor.  There were no upset bids.  Thus far, the Substitute Trustee has not filed a final report of sale.

Up to and including June 30, 2005, the Debtor continued its operations at the Property. Since that date, Cansorb Canada has operated the Debtor's former business.

After the foreclosure sale, Wappler conveyed the Property to Ontario.  At that time, Wappler was, and continues to be, the sole owner of Ontario.  On November 10, 2005, a trustee's deed, transferring ownership of the Property to Ontario, was recorded in the Rowan County Register of Deeds.

On January 10, 2007, Dorssers, Inc., Fortson Freight Systems, Inc., and Safeway, Inc. filed an involuntary bankruptcy petition under Chapter 7 of the Bankruptcy Code against the

8

Debtor.  On February 21, 2007, the Order for Relief was entered.  On November 12, 2007, the Plaintiff filed this adversary proceeding.

## IV.  STANDARD FOR SUMMARY JUDGMENT

The standard for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which is made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure.  Rule 56 provides that the moving party will prevail on a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c);  see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970).  When considering a motion for summary judgment, a court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), cert. denied, 513 U.S. 813 (1994).  The moving party has the burden of establishing that there is an absence of any genuine issue of material fact, and all reasonable inferences must be drawn in favor of the nonmoving party.  Celotex, 477 U.S. at 323.

## V.  ANALYSIS

### A.    Improper Foreclosure

In the Plaintiff's first cause of action, he alleges that he is entitled to set aside the foreclosure sale due to numerous procedural deficiencies.  Both the Plaintiff and the Wappler Defendants seek summary judgment on this cause of action.  The Court will consider each of their arguments in turn.

The Plaintiff argues that the Foreclosure Proceeding was improper because (1) Wappler did not lend money to the Debtor, (2) the foreclosure was based on a default under the Promissory Note, which was not secured by the Deed of Trust, and (3) if the Convertible Debenture and the Promissory Note are the same document, then Wappler extinguished the debt owed to him by fully converting the debt to shares of Cansorb Canada. Based on the information presented to the Court, several genuine issues of fact exist that prevent summary judgment for the Plaintiff.

With respect to the Plaintiff's first argument, an issue exists as to whether Wappler advanced funds to the Debtor. The parties present conflicting accounts of Wappler's advances. In support of his assertion that Wappler advanced funds to Cansorb Canada, the Plaintiff relies, at least in part, on a document titled "J. Wappler Loan Advances to Cansorb Industries Inc.," dated November 2, 2004. This document, created by Edmunds, purports to list numerous advances by Wappler to Cansorb Canada from 1989 through 2004, as well as Wappler's conversion of Cansorb Canada's debt to shares of Cansorb Canada. According to Edmunds, there were not two separate debts, but rather just one loan of $500,000.00. Edmunds also testified that all advances Wappler made to Cansorb Canada were made pursuant to the Convertible Debenture, and that the funds were transferred directly from Wappler to Cansorb Canada.

When the Wappler Defendants were asked to identify all of Wappler's advances or transfers to the Debtor pursuant to the Promissory Note, they brought forth a similar document titled "J. Wappler Loan Advances to CIC," also dated November 2, 2004. This document purportedly lists advances made by Wappler to the Debtor from 1989 through 2004 and includes,

without explanation, Wappler's share conversion.  The advances listed on both documents are largely in the same amounts.  In addition, the response of the Wappler Defendants to the Plaintiff's Motion included an affidavit of Wappler, which declared that Wappler provided the loan advances to Cansorb Canada, who then immediately transferred the funds to the Debtor.  In his affidavit, Wappler states that the loan advances were made pursuant to the Loan Agreement, which contradicts the assertion of the Wappler Defendants that the advances were made pursuant to the Promissory Note.  Were the advances made by Wappler to Cansorb Canada or to the Debtor?  Which debt instrument evidences the indebtedness created by such advances?  What amount, if any, was owed by the Debtor to Wappler at the time of the foreclosure sale?   The evidence conflicts, precluding summary judgment.

Turning to the Plaintiff's second argument in support of his first cause of action, issues of fact exist as to whether the Deed of Trust secures the indebtedness evidenced by the Convertible Debenture <u>or</u> the Promissory Note <u>or</u>, as counsel for the Wappler Defendants argued at the hearing, both documents.  The Plaintiff's assertion that the Deed of Trust secures the indebtedness evidenced by the Convertible Debenture is supported by the fact that the Deed of Trust correctly describes the amount ("$500,000.00") and the due date ("December 28, 1994") of the Convertible Debenture.  However, the Debtor did not execute the Convertible Debenture, so if the indebtedness evidenced by the Convertible Debenture is the <u>only</u> indebtedness secured by the Deed of Trust, then the Plaintiff must prevail.  The Deed of Trust offers another possibility.  Although it states that the Debtor is indebted to Wappler in the amount of $500,000.00 "as evidenced by Convertible Debenture, the terms of which are incorporated herein by reference," it further states that "[t]he final due date for payment of said Promissory Note, if not sooner paid, is

11

December 28, 1994." The Deed of Trust also states that "costs of collection including attorneys fees as provided in the Promissory Note" are secured by the Property. Were the words "Promissory Note" intended by the Debtor and Wappler to indicate that the Deed of Trust secures indebtedness other than the indebtedness evidenced by the Convertible Debenture? Do the words "Promissory Note" in this context refer to the Promissory Note, dated December 28, 1989, that evidences a loan from Wappler to the Debtor in the amount of $500,000.00? Was the Deed of Trust intended to secure only the indebtedness evidenced by the Promissory Note? Or do the words "Promissory Note" simply represent a drafting error? The Notice of Foreclosure Sale filed by the Substitute Trustee on March 24, 2005, states that the Debtor defaulted "in the payment of the Note secured by the said Deed of Trust" and that the "holder of the Note evidencing said indebtedness [has] directed that the Deed of Trust be foreclosed." Does the Notice of Foreclosure Sale refer to the Promissory Note? It makes no reference to the Convertible Debenture and contains no description of the "Note." The pleadings, affidavits, and documents offered, including the Deed of Trust and the Notice of Foreclosure Sale, create unresolved issues of fact sufficient to proscribe summary judgment for the Plaintiff on this cause of action.[4]

The facts supporting the Plaintiff's third argument are also insufficient to grant summary

---

[4]At the very least, the Deed of Trust is internally inconsistent. Evidence is needed to resolve these issues. Drake v. Hance, 673 S.E.2d 411, 413 (N.C. Ct. App. 2009) ("The parol evidence rule prohibits the admission of parol evidence to vary, add to, or contradict the terms of an integrated written agreement, though an ambiguous term may be explained or construed with the aid of parol evidence.") (internal citations omitted); Piedmont Bank and Trust Co. v. Stevenson, 339 S.E.2d 49, 52 (N.C. Ct. App. 1986) ("[W]hen there is ambiguity in the language used, the intent of the parties is a question for the jury and parol evidence is admissible to ascertain that intent.") (citing Root v. Allstate Ins. Co., 158 S.E.2d 829, 835-36 (N.C. 1968))).

judgment.  The Plaintiff argues that even if the Convertible Debenture and the Promissory Note are the same document, as Wappler apparently stated to the Substitute Trustee, Wappler fully converted the debt to shares of Cansorb Canada and therefore the debt was extinguished.  However, the Convertible Debenture and the Promissory Note are <u>not</u> the same document, as evidenced by the fact that each document is in the record.  The record is unclear as to whether the Deed of Trust secures the Convertible Debenture or the Promissory Note.  As noted above, if it secures only the former, then the Plaintiff prevails.  If it secures the latter, then the Wappler Defendants prevail.  Because an issue of fact exists, this Court cannot grant summary judgment for the Plaintiff.

The Wappler Defendants argue that the Trustee cannot challenge the Foreclosure Proceeding because the relitigation of a final foreclosure sale is barred by the doctrine of collateral estoppel.  Under the doctrine of collateral estoppel, once an issue of fact or law is resolved by the final judgment of a court, it is conclusively resolved in subsequent actions between the parties.  <u>Wolstein v. Docteroff (In re Docteroff)</u>, 133 F.3d 210, 214 (3rd Cir. 1997); <u>Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)</u>, 62 F.3d 1319, 1322 (11th Cir. 1995).  Thus, "[c]ollateral estoppel precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding."  <u>Hagan v. McNallen (In re McNallen)</u>, 62 F.3d 619, 624 (4th Cir. 1995).  In determining the preclusive effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel.  <u>In re Ansari</u>, 113 F.3d 17, 19 (4th Cir. 1997).  For collateral estoppel to apply under North Carolina law, the defendant must show that the earlier

13

suit resulted in a final judgment on the merits, that the issue in question was identical to an issue actually litigated and necessary to the judgment, and that litigants were either parties to the earlier suit or were in privity with such parties.  Thomas M. McInnis & Associates, Inc. v. Hall, 349 S.E.2d 552, 60 (N.C. 1986).  The March 3, 2005 order allowing the foreclosure sale was a finding of the Clerk.[5]  The Wappler Defendants cite a North Carolina Court of Appeals case for the proposition that an independent action cannot attack a clerk's order in a foreclosure.  Hassell v. Wilson, 261 S.E.2d 227, 230-231 (N.C. Ct. App. 1980).  However, the Supreme Court of North Carolina overturned that decision of the Court of Appeals, allowing the foreclosure to be attacked for lack of proper service, either by motion or by an independent action.  Hassell v. Wilson, 272 S.E.2d 77, 80 (N.C. 1980).  Further, the Supreme Court of North Carolina held that the clerk of court is merely an "arm of the superior court" and that any action before the superior court is not "appellate or derivative, it is original."  Hassell, 272 S.E.2d at 80 (citing Hudson v. Fox, 127 S.E.2d 556 (N.C. 1962); Langley v. Langley, 72 S.E.2d 235 (N.C. 1952); Perry v. Bassenger, 15 S.E.2d 365 (N.C. 1941); N.C. Gen. Stat. § 1-276).  So long as the collateral attack is to the findings of the clerk and not the findings of a superior court, there is no final judgment on the merits, and collateral estoppel does not apply.

In order for a creditor to foreclose under a power of sale provision in a North Carolina deed of trust, the clerk of court must find that a valid debt exists, proper notice was given, the debt is in default, and the creditor has a right to foreclose.  N.C. Gen. Stat. § 45-21.16(d).  In the

---

[5]"NOW, THEREFORE, I find that the Substitute Trustee can proceed to foreclosure sale under the terms of the above described Deed of Trust and give notice of and conduct a foreclosure sale as by statute provided."  Order entered March 3, 2005 in the Foreclosure Proceeding (signed by Jeffrey R. Berger, Clerk of Superior Court).

Foreclosure Proceeding, the Clerk found that there was a valid debt.  According to the affidavit

of Wappler, the Promissory Note was the valid debt supporting the Deed of Trust.  However, as

previously discussed, the Deed of Trust clearly references the Convertible Debenture and may or

may not reference the Promissory Note.  Because this Court is required to view the facts and

draw reasonable inferences in the light most favorable to the nonmoving party, and because a

genuine issue of fact exists as to whether a "valid debt" owed by the Debtor to Wappler was

secured by the Deed of Trust, the Court cannot grant summary judgment in favor of the Wappler

Defendants.

**B.    Avoidance of Fraudulent Transfer Pursuant to 11 U.S.C. § 548(a)(1)**

The Plaintiff's third cause of action alleges that (1) the transfer of the Property pursuant

to the Foreclosure Proceeding constitutes a fraudulent transfer pursuant to Section 548(a)(1) of

the Bankruptcy Code, (2) the transfer should be avoided, and (3) the Plaintiff should be able to

recover the Property for the benefit of the estate pursuant to Section 550 of the Bankruptcy

Code.  Both the Plaintiff and the Wappler Defendants move for summary judgment on this cause

of action.

Section 548(a)(1) provides:

The trustee may avoid any transfer (including any transfer to or for the benefit of an
insider under an employment contract) of an interest of the debtor in property, or any
obligation (including any obligation to or for the benefit of an insider under an
employment contract) incurred by the debtor, that was made or incurred on or within
2 years before the date of the filing of the petition, if the debtor voluntarily or
involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay,
or defraud any entity to which the debtor was or became, on or after the date that
such transfer was made or such obligation was incurred, indebted; or

(B)(I) received less than a reasonably equivalent value in exchange for such transfer

15

or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

11 U.S.C. § 548(a)(1).

The Plaintiff argues that summary judgment is proper on both actual and constructive fraud theories. It is undisputed that the Property was transferred pursuant to the Foreclosure Proceeding and that the transfer was made within two years of the petition date.[6] Therefore, in order to prevail under Section 548(a)(1)(A), the Plaintiff must show that the transfer was made "with actual intent to hinder, delay, or defraud" creditors. Courts infer fraudulent intent from the presence of "badges of fraud." Whitaker v. Mortgage Miracles, Inc. (In re Summit Place, LLC), 298 B.R. 62, 70 (Bankr. W.D.N.C. 2002). These badges of fraud include:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of events and transactions under inquiry.

In re Soza, 542 F.3d 1060, 1067 (5th Cir. 2008) (citing Chastant v. Chastant (In re Chastant), 873 F.2d 89, 91 (5th Cir. 1989)). "While each fact does not have to demonstrate actual fraud, the facts taken together must lead to the conclusion that actual fraud existed." Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Group, Inc.), 956 F.2d 479, 483-84 (4th Cir. 1992) (citing 4 Collier on Bankruptcy, ¶ 548.02[5] (15th ed. 1989)).

---

[6]In the Defendants' Motion, they assert that the transfer occurred in 1990, which coincides with the recordation of the Deed of Trust. However, the relevant transfer that serves as the basis for the Plaintiff's claims is the transfer of the Property pursuant to the Foreclosure Proceeding, which occurred on March 24, 2005, within two years of the petition date.

The Plaintiff alleges that numerous badges of fraud are present in this case to demonstrate an actual intent to defraud.  As part of his argument, the Plaintiff relies on two facts in dispute: that Wappler did not advance money to the Debtor and that Wappler presented the Clerk with a debt instrument which was not identified in the Deed of Trust.  As explained above, an genuine issue exists as to both of these facts.  Absent resolution of these fact issues, despite the presence of other apparent badges of fraud, the Court cannot grant summary judgment for the Plaintiff.  Moreover, summary judgment is generally not appropriate for the disposition of a fraudulent transfer claim based on actual intent because the debtor's subjective intent is at issue. Schnittjer v. Houston (In re Houston), 385 B.R. 268, 272 (Bankr. N.D. Iowa 2008) (holding that summary judgment under § 548(a)(1)(A) for actual fraud is not proper because it requires a fact-based finding of fraudulent intent); Osherow v. Porras (In re Porras), 312 B.R. 81, 105 (Bankr. W.D. Tex. 2004) (denying summary judgment on trustee's actual fraudulent transfer claim and noting that "court is reluctant to find intent to hinder, delay or defraud as a matter of law"); IDS Holding Co. v. Madsen (In re IDS Holding Co.), 292 B.R. 233, 236-37 (Bankr. D. Conn. 2003) (denying summary judgment on § 548(a)(1)(A) claim because "[s]ummary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective determinations play dominant roles").

For the Plaintiff to prevail under Section 548(a)(1)(B), he must show that the Debtor received less than a reasonably equivalent value in exchange for the transfer and that the Debtor was insolvent on the date of the transfer or became insolvent as a result of the transfer.  The Plaintiff again relies on the allegations that Wappler did not provide advances to the Debtor and that the Debtor did not owe any money to Wappler, facts that are in controversy.  Therefore, the

Court cannot grant summary judgment in favor of the Plaintiff on a constructive fraud theory.

The Wappler Defendants also move for summary judgment on this cause of action. The Wappler Defendants rely on the Supreme Court's decision in <u>BFP v. Resolution Trust Corp.</u>, 511 U.S. 531 (2004), to support the argument that the Plaintiff cannot attack the validity of a properly held foreclosure sale. In <u>BFP</u>, the Court interpreted the phrase "reasonably equivalent value" for foreclosed property as "the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." 511 U.S. at 545. The Court limited its holding to properly conducted foreclosure sales, and the Court concluded that any material irregularity will deprive the foreclosure sale price of its conclusive force. <u>See</u> <u>id.</u> at 545-46; <u>see also</u> <u>In re Main, Inc.</u>, No. 96-19098, slip op. at 13-14 (Bankr. E.D. Pa. Nov. 4, 1998) (1998 WL 778017), <u>aff'd</u>, No. 98-6460, slip op. (E.D. Pa. Sept. 3, 1999) (1999 WL 689715) (holding that <u>BFP</u> does not support the blind validation of a sale tainted with numerous defects); <u>Mussetter v. Lyke</u>, 10 F. Supp. 2d 944, 959 (N.D. Ill. 1998) ("It is equally self-evident that a collusive foreclosure sale may be set aside as involving a fraudulent transfer.").

Pursuant to N.C. Gen. Stat. § 45-21.16, a notice of hearing must be served upon each party entitled to notice, including any person obligated to repay the indebtedness and every record owner of the real estate. The notice must be served in the manner provided by the North Carolina Rules of Civil Procedure for the service of a summons. N.C. Gen. Stat. § 45-21.16(a). In this case, the North Carolina Rules of Civil Procedure required the Substitute Trustee to serve the Debtor, a foreign corporation, in one of four ways, including by mailing a copy of the notice by registered or certified mail, return receipt requested, addressed to an officer, director, or managing agent of the Debtor. <u>See</u> N.C. R. Civ. P. 4(j)(6). According to the Affidavit of

18

Certified Mail executed by the Substitute Trustee and the Return Receipt, the notice was addressed to "Cansorb Industries Corp.," the Debtor, rather than an officer, director, or managing agent. The Return Receipt was signed by Jennifer Dartt and the box next to "Agent" was checked. Ms. Dartt was later identified as an administrative assistant of the Debtor. This evidence raises a genuine issue as to whether the Debtor was given proper notice of the Foreclosure Proceeding.

In addition, as noted earlier, the Clerk is required to find that the party seeking to foreclose is the holder of a valid debt before he can authorize the foreclosure action. N.C. Gen. Stat. § 45-21.16(d). The Clerk found that Wappler is the holder of "the Note" and the Deed of Trust, but, as discussed above, it is unclear whether the Deed of Trust secures the Promissory Note or the Convertible Debenture or both, and a genuine issue exists as to whether the Clerk made the proper finding. In sum, the circumstances surrounding the Foreclosure Proceeding raise an issue of fact as to whether the sale was properly conducted and preclude the granting of summary judgment in favor of the Wappler Defendants.

**C.    Avoidance of Fraudulent Transfer Pursuant to 11 U.S.C. § 544(b) and N.C. Gen. Stat. §§ 39-23.4 and 39-23.5**

The Plaintiff's fourth cause of action alleges that the transfer pursuant to the Foreclosure Proceeding constitutes a fraudulent transfer pursuant to N.C. Gen. Stat. §§ 39-23.4 and 39-23.5. The Plaintiff asserts that he can avoid the foreclosure sale under Section 544(b) of the Bankruptcy Code. Both the Plaintiff and the Wappler Defendants move for summary judgment on this cause of action.

Pursuant to Section 544(b), the trustee may avoid any transfer of the debtor that is voidable under applicable law. 11 U.S.C. § 544(b). The Plaintiff asserts that the transfer may be

19

avoided under North Carolina's version of the Uniform Fraudulent Transfer Act (the "UFTA"). Section 39-23.4 of the UFTA contains both actual and constructive fraud provisions, much like Section 548 of the Bankruptcy Code. Section 39-23.5 of the UFTA also contains a constructive fraud provision. The Plaintiff seeks summary judgment on both theories.

According to Section 39-23.4(a):

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) With intent to hinder, delay, or defraud any creditor of the debtor; or

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
b. Intended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.C. Gen. Stat. § 39-23.4(a). Section 39-23.5 states:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is voidable as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

N.C. Gen. Stat. § 39-23.5.

As the transfer pursuant to the Foreclosure Proceeding constitutes a transfer by the Debtor, to prevail under Section 39-23.4(a)(1), the Plaintiff must show that the transfer was

made "with intent to hinder, delay, or defraud" creditors.  In making this determination,

Section 39-23.4(b) provides a nonexclusive list of factors appropriate for consideration by this

Court:

> (1) The transfer or obligation was to an insider; (2) The debtor retained possession or control of the property transferred after the transfer; (3) The transfer or obligation was disclosed or concealed; (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) The transfer was of substantially all the debtor's assets; (6) The debtor absconded; (7) The debtor removed or concealed assets; (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor; (12) The debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as they became due; and (13) The debtor transferred the assets in the course of legitimate estate or tax planning.

N.C. Gen. Stat. § 39-23.4(b).

In support of his argument for actual and constructive fraud under the UFTA, the Plaintiff

relies on the identical facts and evidence proffered to support his Section 548(a) claims, set out

above.  As genuine issues of fact exist to preclude summary judgment in the Plaintiff's favor on

the Section 548(a)(1) claims, granting summary judgment on the Plaintiff's UFTA claims is

likewise inappropriate.

The Wappler Defendants also move for summary judgment on this cause of action,

arguing that they are entitled to summary judgment "for all of the reasons set out above."  This

Court assumes that the Wappler Defendants are relying on their arguments in support of

summary judgment for the improper foreclosure and Section 548 claims, which are the only

causes of action on which the Wappler Defendants expended any significant effort supporting

21

their motion.  However, as genuine issues of fact exist to deny their requested relief on those causes of action, here too, summary judgment is denied.

In addition, the Wappler Defendants cite <u>Knapper v. Bankers Trust Co. (In re Knapper)</u>, 409 F.3d 573, 583 (3rd Cir. 2005), for the proposition that a "sheriff's sale pursuant to an order of court on a mortgage debt can not constitute a fraudulent transfer in violation of § 544(b)(1)." In <u>Knapper</u>, the debtor attempted to use Section 544(b)(1) to void certain default judgments and sheriffs' sales based on alleged violations of the Pennsylvania Rules of Civil Procedure.  <u>Id.</u> at 581.  The court rejected the argument, noting that Section 544(b) "gives the trustee the right to void transfers, not the debtor.  <u>Id.</u> at 583.  As the facts and arguments of <u>Knapper</u> are readily distinguishable from the case at bar, the Court is not persuaded by this argument.

**D.    The Wappler Defendants' Motion for Summary Judgment on the Plaintiff's Remaining Causes of Action**

The Wappler Defendants also move for summary judgment on the second, sixth, and seventh causes of action.  In support of their position, the Wappler Defendants argue that these actions are barred for the same reasons that they assert in response to the first cause of action, improper foreclosure.  Inasmuch as collateral estoppel does not bar the Trustee from attacking the Foreclosure Proceeding, and because a genuine issue exists as to whether Wappler held a valid debt owed by the Debtor under N.C. Gen. Stat. § 45-21.16(d), summary judgment for the Wappler Defendants must be denied.

**VI.  CONCLUSION**

Based on the facts and circumstances of this case, the Court concludes that the Plaintiff's Motion on the first, third, and fourth causes of action and the Wappler Defendants' Motion on the first, second, third, fourth, sixth, and seventh causes of action should be denied.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

November 20, 2009

**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON-SALEM DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CANSORB INDUSTRIES | ) | Case No.: 07-50041 |
| CORPORATION, | ) | |
| | ) | |
|     Debtor. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| C. EDWIN ALLMAN, III, TRUSTEE | ) | |
| FOR THE BANKRUPTCY ESTATE | ) | |
| OF CANSORB INDUSTRIES | ) | |
| CORPORATION, | ) | |
| | ) | |
|     Plaintiff, | ) | Adv. No.: 07-6072 |
| | ) | |
| vs. | ) | |
| | ) | |
| JOACHIM WAPPLER, CANSORB | ) | |
| INDUSTRIES, INC., STEELMASTER | ) | |
| INDUSTRIES, INC., 2070997 | ) | |
| ONTARIO, INC., and | ) | |
| DWIGHT L. CROWELL, III, in his | ) | |
| capacity as substitute trustee on the | ) | |
| Deed of Trust recorded in Book 652, | ) | |
| Page 400 of the Rowan County Public | ) | |
| Registry, | ) | |
| | ) | |
|     Defendants. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

PARTIES IN INTEREST

C. Edwin Allman, III, Esq.

Jeffrey E. Oleynik, Esq.

John H. Boddie, Esq.

Joachim Wappler

Cansorb Industries, Inc.

Steelmaster Industries, Inc.

2070997 Ontario, Inc.

Steven M. Russell, Esq.

Dwight L. Crowell, III